**Timothy S. DeJong**, OSB No. 940662
Email: tdejong@stollberne.com
**Chloe A. Jasper**, OSB No. 253957
Email: cjasper@stollberne.com
STOLL STOLL BERNE LOKTING & SHLACHTER P.C.
209 S.W. Oak Street, Suite 500
Portland, Oregon 97204
Telephone: (503) 227-1600

**Benjamin Berkowitz**, (*pro hac vice*)
Email: bberkowitz@keker.com
**Matan Shacham**, (*pro hac vice*)
mshacham@keker.com
**Drew H. Washington** (*pro hac vice forthcoming)*
dwashington@keker.com
Keker, Van Nest & Peters LLP
633 Battery Street
San Francisco, CA 94111-1809
Telephone: (415) 773-6612

*Attorneys for Defendant GoFundMe Inc.*

**UNITED STATES DISTRICT COURT**

**DISTRICT OF OREGON**

**EUGENE DIVISION**

| | |
|---|---|
| COMMUTE OPTIONS FOR CENTRAL OREGON, an Oregon Nonprofit Corporation; MCKENZIE VALLEY LTRG OF LANE COUNTY, an Oregon Nonprofit Corporation; OUTDOOR EDUCATION ADVENTURES, an Oregon Nonprofit Corporation; THE WATERSTRONG INITIATIVE, an Oregon Nonprofit Corporation; EUGENE PUBLIC LIBRARY FOUNDATION, an Oregon Nonprofit Corporation; and the OREGON SHAKESPEARE FESTIVAL ASSOCIATION, an Oregon Nonprofit Corporation,<br><br>Plaintiffs,<br><br>v.<br><br>GOFUNDME INC., a Delaware Corporation; and JOHN DOES NO. 1-100,<br><br>Defendants. | Case No. 6:26-00475-AP<br><br>DEFENDANT GOFUNDME INC.'S MOTION TO DISMISS<br><br>**ORAL ARGUMENT REQUESTED** |

TABLE OF CONTENTS

I. INTRODUCTION .......... 1

II. BACKGROUND .......... 4

A. GoFundMe's online crowdfunding platform. .......... 4

B. GoFundMe creates NPO Pages using publicly available data in order to help users find and donate to nonprofits. .......... 5

C. GoFundMe removes unclaimed NPO Pages beginning in October 2025 .......... 9

D. Plaintiffs' Allegations .......... 10

III. LEGAL STANDARD .......... 11

IV. ARGUMENT .......... 12

A. Plaintiffs' Lanham Act claim fails because making truthful statements about how to donate to a charity is protected as nominative fair use. .......... 12

1. GoFundMe cannot identify the nonprofits without using their names. .......... 13

2. GoFundMe does not use more of the trademarks than reasonably necessary to allow users to find and donate to nonprofits. .......... 13

3. Plaintiffs allege no facts showing false sponsorship .......... 15

B. Plaintiffs lack standing under the Lanham Act because they suffered no commercial injury from GoFundMe telling users how to donate to them. .......... 19

1. Plaintiffs allege no injury to their reputation or sales. .......... 19

2. Plaintiffs cannot satisfy the proximate-cause requirement. .......... 22

C. Plaintiffs' Lanham Act claim also fails because Plaintiffs do not allege GoFundMe's use of their nonprofit name was likely to cause confusion among donors or damage to Plaintiffs. .......... 24

D. Plaintiffs' conversion claim fails because they do not and cannot allege any amount of funds withheld from them. .......... 25

E. Plaintiffs' unjust enrichment claim fails because they cannot identify any funds meant for Plaintiffs that GoFundMe received or withheld. .......... 28

F. Punitive damages is not a standalone claim. .......... 29

V. CONCLUSION....................................................................................................29

TABLE OF AUTHORITIES

**Cases**

*1800 Get Thin, LLC v. Hiltzik*,
No. CV11–00505 ODW, 2011 WL 3206486 (C.D. Cal. July 25, 2011) .......... 12, 16

*23andMe, Inc. v. Ancestry.com DNA, LLC*,
356 F. Supp. 3d 889 (N.D. Cal. 2018), *aff'd*, 778 F. App'x 966 (Fed. Cir. 2019) .......... 17

*Advanced Fluid Sys., Inc. v. Huber*,
28 F.Supp.3d 306 (M.D. Pa. 2014) .......... 18

*Alfasigma USA, Inc. v. First Databank, Inc.*,
No. 18-cv-06924-HSG, 2022 WL 899848 (N.D. Cal. Mar. 28, 2022) .......... 22

*Applied Underwriters, Inc. v. Lichtenegger*,
913 F.3d 884 (9th Cir. 2019) .......... 11

*Architectural Mailboxes, LLC v. Epoch Design, LLC*,
No. 10cv974 DMS, 2011 WL1630809 (S.D. Cal. Apr. 28, 2011) .......... 12

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009) .......... 2, 10, 14

*Beachbody, LLC v. Universal Nutrients, LLC*,
No. CV 16-02015-R, 2016 WL 3912014 (C.D. Cal. July 18, 2016) .......... 12, 16

*Bell Atl. Corp. v. Twombly*,
550 U.S. 544 (2007) .......... 2, 10

*Belmora LLC v. Bayer Consumer Care AG*,
819 F.3d 697 (4th Cir. 2016) .......... 18

*Cairns v. Franklin Mint Co.*,
292 F.3d 1139 (9th Cir. 2002) .......... 11, 13, 14, 16

*Carrico v. City & Cnty. of S.F.*,
656 F.3d 1002 (9th Cir. 2011) .......... 11

*Charlotte's Web, Inc. v. AAXLL Supply Co. LLC*,
No. 4:20-cv-02692-YGR, 2020 WL 6891876 (N.D. Cal. Nov. 24, 2020) .......... 18

*Dr. Seuss Enters., L.P. v. ComicMix LLC*,
256 F. Supp. 3d 1099 (S.D. Cal. 2017) .......... 12

*Ely Holdings Ltd. v. O'Keeffe's, Inc.*,
No. 18-cv-06721-JCS, 2019 WL 3779197 (N.D. Cal. Aug. 12, 2019) ....................................17

*Hart v. Amazon.com, Inc*.,
191 F. Supp. 3d 809 (N.D. Ill. 2016), *aff'd*, 845 F.3d 802 (7th Cir. 2017) ........................22, 23

*Hasbro, Inc. v. Asus Comput. Int'l, Inc.*,
No. CV 11–10437 PSG, 2012 WL 13012663 (C.D. Cal. Mar. 23, 2012) ................................16

*Imhoff v. Ethicon, In*c.,
No. 3:20-CV-00380-AR, 2022 WL 4239171 (D. Or. July 15, 2022).......................................26

*Int'l Found. of Em. Ben. Plans, Inc. v. Cottrell*,
No. WDQ–14–1269, 2015 WL 127839 (D. Md. Jan. 7, 2015) ................................................18

*Killa Bees Distrib. LLC v. Left Coast Fin. Sols., Inc.*,
No. 3:23-cv-1629-JR, 2025 WL 3055771 (D. Or. Oct. 31, 2025).....................................19, 20

*Left Field Holdings v. Google LLC*,
No. 22-CV-01462-VC, 2022 WL 17072948 (N.D. Cal. Nov. 18, 2022) ................1, 13, 15, 16

*Lexmark Int'l, Inc. v. Static Control Components, Inc.*,
572 U.S. 118 (2014)..................................................................................................2, 17, 18, 21

*Maffick LLC v. Facebook, Inc.*,
No. 20-CV-05222-JD, 2021 WL 1893074 (N.D. Cal. May 11, 2021) ....................................21

*Martin v. Wendy's Int'l, Inc*.,
183 F. Supp. 3d 925 (N.D. Ill. 2016) ..........................................................................................23

*Motameni v. Adams*,
No. 3:21-CV-01184-HZ, 2022 WL 3682940 (D. Or. Aug. 25, 2022).....................................24

*Multi Time Mach., Inc. v. Amazon.com, Inc.*,
804 F.3d 930 (9th Cir. 2015) ......................................................................................................16

*Network Automation, Inc. v. Advanced Sys. Concepts, Inc.*,
638 F.3d 1137 (9th Cir. 2011) ....................................................................................................14

*New Kids on the Block v. News Am. Pub., Inc.*,
971 F.2d 302 (9th Cir. 1992) ............................................................................................. *passim*

*PC Drivers Headquarters, LP v. Malwarebytes Inc.*,
371 F. Supp. 3d 652 (N.D. Cal. 2019) ........................................................................................12

*Prestonettes, Inc. v. Coty*,
264 U.S. 359 (1924)....................................................................................................................11

*Sellassie v. Inesscents Aromatic Botanicals, LLC*,
No. 1:20-CV-00455-CL, 2020 WL 5414594 (D. Or. July 28, 2020), *report and recommendation adopted sub nom. Sellasie v. Inesscents Aromatic Botanicals, LLC*, No. 1:20-CV-455-CL, 2020 WL 5409155 (D. Or. Sept. 8, 2020) ....................24

S*nell v. Vocational Rehab. State Unit Pers*.,
No. 3:20-CV-00242-MO, 2020 WL 4506779 (D. Or. Aug. 5, 2020)....................27

*Somers v. Apple, Inc.*,
729 F.3d 953 (9th Cir. 2013) ....................11

*Soo Park v. Thompson*,
851 F.3d 910 (9th Cir. 2017) ....................17

*Sprewell v. Golden State Warriors*,
266 F.3d 979 (9th Cir. 2001) ....................10

*Talk Radio Network Enters. v. Cumulus Media Inc.*,
271 F. Supp. 3d 1195 (D. Or. 2017) .................... *passim*

*ThermoLife Int'l LLC v. Sparta Nutrition LLC*,
No. CV-19-01715-PHX-SMB, 2020 WL 248164 (D. Ariz. Jan. 16, 2020) ....................18, 22

*Toyota Motor Sales, U.S.A., Inc. v. Tabari*,
610 F.3d 1171 (9th Cir. 2010) .................... *passim*

*Welk Resort Grp. Inc. v. Reed Hein & Assocs., LLC*,
No. 3:17-cv-01499-L-AGS, 2019 WL 1242446 (S.D. Cal. Mar. 18, 2019)....................19

*Zamfir v. Casperlabs*,
LLC, 528 F. Supp. 3d 1136 (S.D. Cal. 2021) ....................22

**Federal Statutes**

Lanham Act.................... *passim*

**State Statutes**

ORS 31.730(1) ....................26

**Rules**

LR 7-1 ....................1

Fed. R. Civ. P. 9(b) ....................17

Fed. R. Civ. P. 12(b)(6)....................10

## CERTIFICATE OF COMPLIANCE WITH LR 7-1

Pursuant to LR 7-1 Counsel for Defendant GoFundMe Inc. certifies that the parties made a good faith effort by telephone to resolve the dispute but have been unable to do so.

## MOTION

Defendant GoFundMe Inc. hereby moves this Court to dismiss Plaintiffs' Amended Class Action Allegation Complaint in its entirety and with prejudice for failure to state a claim under Federal Rules of Civil Procedure 12(b)(6). The motion is based on the following memorandum of points and authorities, GoFundMe Inc.'s Request for Judicial Notice filed concurrently herewith, the Washington Declaration in support of Request for Judicial Notice, with exhibits attached thereto in support of the same, and on all pleadings and papers on file or to be filed in the above-entitled action, on the arguments of counsel, and on any other matters that may properly come before the Court for its consideration.

## MEMORANDUM OF POINTS AND AUTHORITIES

### I. INTRODUCTION

This case should never have been filed. GoFundMe Inc. ("GoFundMe") created nonprofit organization pages ("NPO Pages") for a single purpose: to help donors find and give money to the nonprofits they care about. The NPO Pages directed donations ***to*** non-profit organizations—not away from them. They used publicly available information to identify nonprofits so that GoFundMe's more than 100 million monthly visitors could discover and support charitable organizations through a trusted, third-party payment processor. This is precisely the type of truthful, informational use of a nonprofit's name that the Lanham Act's nominative fair use doctrine protects. Indeed, in *Left Field Holdings v. Google LLC*, No. 22-CV-01462-VC, 2022 WL


STOLL STOLL BERNE LOKTING & SHLACHTER P.C.
209 S.W. OAK STREET, SUITE 500
PORTLAND, OREGON 97204
TEL. (503) 227-1600 FAX (503) 227-6840

17072948, at *1 (N.D. Cal. Nov. 18, 2022), a court in this Circuit dismissed a nearly identical claim at the pleading stage, holding that Google's automated creation of restaurant pages—featuring names, images, and basic information with a mechanism for ordering through third-party services—was "a textbook example of nominative fair use[.]" This case is legally indistinguishable.

The facts confirm that Plaintiffs' Amended Class Action Allegation Complaint ("Amended Complaint") is meritless. Not a single donor made a single donation to any of the six Plaintiffs'[1] NPO Pages. Not a single penny was redirected by GoFundMe or by anyone else. Two of the named Plaintiffs—Commute Options and Waterstrong—affirmatively claimed their NPO Pages and left them active on GoFundMe's website to this day, fatally undermining any theory of unauthorized use. And Plaintiffs' allegation that GoFundMe's transaction fees somehow reduced donations ignores that one of the six Plaintiffs does not even accept online donations, and the remaining five have websites that accept credit card donations subject to standard processing fees that are generally higher than those charged through GoFundMe's website. Indeed, three of those Plaintiffs' own websites ask donors to add 2.53% to 3.95% extra to cover their credit card processing fees. Plaintiffs' Amended Complaint rests almost entirely on "information and belief" allegations, unsupported by any specific facts, that donors "potentially" made donations and GoFundMe "potentially" withheld them. Such threadbare pleading, which does no more than recite legal conclusions and speculate about wrongdoing without factual support, cannot survive a

[1] Commute Options for Central Oregon ("Commute Options"), McKenzie Valley Ltrg of Lane County ("McKenzie Valley"), Outdoor Education Adventures ("Outdoor Education"), the Waterstrong Initiative ("Waterstrong"), Eugene Public Library Foundation ("Eugene Public Library"), and Oregon Shakespeare Festival Association ("Oregon Shakespeare").


STOLL STOLL BERNE LOKTING & SHLACHTER P.C.
209 S.W. OAK STREET, SUITE 500
PORTLAND, OREGON 97204
TEL. (503) 227-1600 FAX (503) 227-6840

motion to dismiss under *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009), and *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).

Plaintiffs attempt to frame GoFundMe's creation of the NPO Pages—which used publicly available names, logos, and mission statements to help donors identify charities—as some manner of illegal scheme to confuse donors, damage reputations, and withhold funds. Plaintiffs' central grievance is that GoFundMe created these pages "without the knowledge, input, or authorization" of the nonprofits. But authorization is not required. The nominative fair use doctrine exists precisely to protect the truthful use of another's name to identify them, "even if the speaker fails to expressly disavow association with the trademark holder[.]" *Toyota Motor Sales, U.S.A., Inc. v. Tabari*, 610 F.3d 1171, 1177 (9th Cir. 2010). GoFundMe's use satisfies all three factors of the Ninth Circuit's *New Kids on the Block* test, and this Court should dismiss the Lanham Act claim on that basis. *New Kids on the Block v. News Am. Pub., Inc.*, 971 F.2d 302, 308 (9th Cir. 1992).

Yet even setting aside nominative fair use, Plaintiffs lack standing to bring a Lanham Act claim. Under *Lexmark Int'l, Inc. v. Static Control Components, Inc.*, 572 U.S. 118, 131–32 (2014), a plaintiff must allege injury to a commercial interest in reputation or sales proximately caused by the defendant's conduct. Plaintiffs have done neither. They cannot allege lost sales because the very purpose of the NPO Pages was to send money ***to*** them, not to compete with them. Worse still, they have not identified a single donation made through any of their NPO Pages, much less one that diverted funds from their own websites. This is because none exist. And their vague assertions of reputational harm—unsupported by any identified misstatement or specific instance of donor confusion—amount to nothing more than speculation dressed in legal conclusions. Separately, Plaintiffs fail to plead the elements of a Lanham Act claim because they have alleged no facts establishing that any reasonable consumer would believe the NPO Pages were anything


STOLL STOLL BERNE LOKTING & SHLACHTER P.C.
209 S.W. OAK STREET, SUITE 500
PORTLAND, OREGON 97204
TEL. (503) 227-1600 FAX (503) 227-6840

other than what they plainly were: pages created by GoFundMe listing public information about nonprofits and providing a mechanism for donating.

Plaintiffs' state-law claims fare no better. Their conversion claim fails because they cannot identify a single dollar that GoFundMe withheld—indeed, they cannot allege that any donation was ever made to their NPO Pages in the first place. Moreover, GoFundMe is a platform, not a payment processor, so if any donation had been made to any of Plaintiffs' NPO Pages, those funds would have been processed by a third-party payment processor, such as PayPal Giving Fund ("PPGF"). Under Oregon law, a conversion claim requires identification of specific sums over which the defendant exercised dominion; Plaintiffs identify none. *See Talk Radio Network Enters. v. Cumulus Media Inc.*, 271 F. Supp. 3d 1195, 1210 (D. Or. 2017) (dismissing conversion claim with prejudice for failure to identify sums). Their unjust enrichment claim likewise fails because Plaintiffs have not adequately alleged that GoFundMe received any benefit—let alone an unjust one—that was intended for and never delivered to Plaintiffs. And Plaintiffs' punitive damages "claim" is not an independent cause of action under Oregon law and cannot be sustained where, as here, no underlying claim has been adequately pled.

For these reasons, and as detailed below, the Amended Complaint should be dismissed in its entirety with prejudice.

## II. BACKGROUND

### A. GoFundMe's online crowdfunding platform.

GoFundMe's mission is to help people help each other. Since 2010, GoFundMe has raised more than $40 billion for communities across the globe including in support of medical treatments, disaster relief efforts, community organizations, schools, families in crisis, and countless other charitable causes. Through its website, GoFundMe provides a popular online crowdfunding


STOLL STOLL BERNE LOKTING & SHLACHTER P.C.
209 S.W. OAK STREET, SUITE 500
PORTLAND, OREGON 97204
TEL. (503) 227-1600 FAX (503) 227-6840

platform for people to fundraise for individuals, organizations, and causes they support safely and easily. Am. Compl. ¶ 10. The platform serves as a tool for running fundraisers and connecting organizers with donors. GoFundMe is not a bank, payment processor, broker, charity, or financial advisor, and it does not solicit donations for itself or anyone else. *See* Washington Declaration in support of Request for Judicial Notice ("RJN Decl.") Ex. K § 3.2.

### B. GoFundMe creates NPO Pages using publicly available data in order to help users find and donate to nonprofits.

Over the last 16 years, GoFundMe has enabled support for more than 166,000 nonprofit organizations. Every month, more than 100 million people visit GoFundMe, and many of them search for nonprofits to support. GoFundMe believes that its efforts to promote visibility and provide fundraising tools to the nonprofit sector are particularly important now, as nonprofits face rising donor acquisition costs, uncertainty around government funding, stagnant giving, and increasing community needs. It was in this spirit of helping the nonprofit sector that GoFundMe sought to increase charitable giving amounts and make its tools and donor community more easily available for nonprofits. In July 2024, GoFundMe started creating NPO Pages for approximately 1.4 million charities, using publicly available information. *See* Am. Compl. ¶¶ 23, 31, 32. These NPO Pages allowed individuals to find charities and the causes they cared about through GoFundMe's website and to donate to them using third-party payment processors, including most commonly PPGF. *Id.* ¶¶ 10, 25, 28.

The NPO Page for Plaintiff Commute Options—which claimed its page and left it up to this day—provides an illustration of how the NPO Pages operated. RJN Decl. Ex. A.[2] The page

[2] As GoFundMe details in its concurrently filed Request for Judicial Notice, the NPO Page for Commute Options is incorporated by reference in the Amended Complaint and, in the


STOLL STOLL BERNE LOKTING & SHLACHTER P.C.
209 S.W. OAK STREET, SUITE 500
PORTLAND, OREGON 97204
TEL. (503) 227-1600 FAX (503) 227-6840

features GoFundMe's logo at the top and uses the same light-green, white, and black color scheme used throughout GoFundMe's website.




The NPO Page listed the name of the nonprofit using the same font used throughout GoFundMe's website in big, bold, black lettering. *Id.* A small version of the nonprofit's logo appeared above the plain reference to the nonprofit's name. *Id.* The nonprofit's mission statement appeared in small lettering below the plain reference to the nonprofit's name. *Id.* More information about the nonprofit appeared at the bottom of the page including a list with the nonprofit's website and social media pages, a list of related causes, and the nonprofit's tax ID, address, and year of establishment—along with a note that "[s]elect content is provided by Candid."

---

alternative, is judicially noticeable.


STOLL STOLL BERNE LOKTING & SHLACHTER P.C.
209 S.W. OAK STREET, SUITE 500
PORTLAND, OREGON 97204
TEL. (503) 227-1600 FAX (503) 227-6840

commute options

## About Commute Options

Commute Options increases access to transportation options across Oregon.

50 SW Bond St Ste 4
Bend, OR 97702

**Find Commute Options at**

- commuteoptions.org/
- facebook.com/CommuteOptions
- instagram.com/commuteoptions/
- twitter.com/CommuteOptions
- linkedin.com/company/commute-options
- youtube.com/channel/UCDeqm_go_1roG3qDNs1soaQ
- guidestar.org/profile/93-1330126
- charitynavigator.org/ein/931330126

**Causes**

Education, Community organizing, Traffic safety, Air quality, Physical fitness

**Established**

2002

**Verified on GoFundMe**

2025

**Tax ID**

93-1330126

**NTEE code**

Community Improvement, Capacity Building N.E.C.

Commute Options is a 501(c)(3) public charity, EIN 93-1330126. Donations are tax-deductible. Select content is provided by Candid.

RJN Decl. Ex A. Candid collects public nonprofit information about nonprofits from the Internal Revenue Service.

The NPO Page clearly and conspicuously disclosed to donors how their donation would be processed and handled. Immediately below the button for donating, the page explained: "Your donation may be sent directly to the nonprofit, if they have enabled GoFundMe Pay with us. If not, it will be sent to PayPal Giving Fund, minus transaction fees, and granted within 15-45 days, subject to its terms." RJN Decl. Ex. B.


STOLL STOLL BERNE LOKTING & SHLACHTER P.C.
209 S.W. OAK STREET, SUITE 500
PORTLAND, OREGON 97204
TEL. (503) 227-1600 FAX (503) 227-6840



**Your donation**

| | |
|---|---|
| Your donation | $200.00 |
| GoFundMe tip | $35.00 |
| Total due today | $235.00 |

PayPal

By clicking 'PayPal', you agree to GoFundMe's Terms of Service and Privacy Notice, including disclosing your name and email to the nonprofit for compliance purposes. Learn more about pricing and fees.

Your donation may be sent directly to the nonprofit, if they have enabled GoFundMe Pay with us. If not, it will be sent to PayPal Giving Fund, minus transaction fees, and granted within 15-45 days, subject to its terms. In the unlikely event that there is a problem funding your chosen nonprofit, PayPal Giving Fund will (whenever possible) ask you to recommend another, and grant the funds to a similar nonprofit if you don't respond. Your donation is typically tax deductible in the US.

This disclosure hyperlinked to both GoFundMe's pricing page (RJN Decl. Ex. J) and the terms and policies for PPGF, the DAF that takes and delivers the donation (RJN Decl. Ex. L). GoFundMe's pricing page explained to donors that for nonprofits, one transaction fee of 2.2% + $.30 applies to each donation and included a tool that allows visitors to determine the amount of donations that would be delivered to nonprofits in various hypothetical donation scenarios. RJN Decl. Ex J. GoFundMe charged this transaction fee, which operated like (but was generally lower than) any standard online or credit card transaction fee, primarily to offset the transaction fee that PPGF charges GoFundMe for processing the payment. *See id.*


STOLL STOLL BERNE LOKTING & SHLACHTER P.C.
209 S.W. OAK STREET, SUITE 500
PORTLAND, OREGON 97204
TEL. (503) 227-1600 FAX (503) 227-6840

GoFundMe's tipping mechanism was also clearly and conspicuously disclosed to donors. Below the donation box, the donation page contained a tip slide-bar mechanism that enabled donors to add—or, if they prefer, not to add—an optional tip to their donation. RJN Decl. Ex. B.

Whether or not a donor elects to leave a tip, GoFundMe presents all donors with an itemized total for their donation—***before*** payment is confirmed—that separately sets out the donation and the tip. *Id*. If the donor chooses to leave a tip, the tip is added in addition to the donation amount. *Id*. It does not reduce the donation amount.

### C. GoFundMe removes unclaimed NPO Pages beginning in October 2025

Similar to how other popular platforms, such as Yelp, operate for businesses, nonprofits were free to claim their NPO Page or to have it removed. NPO Pages for organizations that had not expressly opted in by claiming their pages were removed from the GoFundMe platform beginning in late October 2025. After that, only pages that nonprofits had affirmatively claimed remained on GoFundMe's website. Plaintiffs Commute Options and Waterstrong claimed their NPO Pages and left them up on GoFundMe's website. RJN Decl. Exs. A & C.[3] Waterstrong even started a fundraiser through the page. RJN Decl. Ex. C. Neither NPO Page has received a single donation to date, as reflected by the "Be the first to donate" icon that appears on both pages. RJN Decl. Exs. A & C.

---

[3] As GoFundMe details in its concurrently filed Request for Judicial Notice, these webpages are incorporated by reference in the Amended Complaint and, in the alternative, are judicially noticeable.


STOLL STOLL BERNE LOKTING & SHLACHTER P.C.
209 S.W. OAK STREET, SUITE 500
PORTLAND, OREGON 97204
TEL. (503) 227-1600 FAX (503) 227-6840

### D. Plaintiffs' Allegations

Plaintiffs filed their original Complaint on March 11, 2026. Dkt. 2. On July 2, 2026, Plaintiffs filed the Amended Complaint which dropped GoFundMe Payments, Inc. as a defendant and added three additional Plaintiffs. Dkt. 19.

Plaintiffs bring putative class action claims against GoFundMe for false association or endorsement under the Lanham Act, conversion, unjust enrichment, and punitive damages (Am. Compl. ¶¶ 34-56) despite asserting threadbare "information and belief" based allegations and those based on what Plaintiffs "believed" occurred or could have "potentially" occurred, without facts to support the same.

Plaintiffs allege that GoFundMe (1) "is believed" to have created NPO Pages on Plaintiffs' behalf, and for other putative class members, that included "photos, logos, mission statements, links to YouTube channels, and other information" that was "either wrong, outdated or contrary to the tone and mission of the non-profits" (*Id*. ¶ 23); (2) that GoFundMe "potentially accepted" donations from donors and "upon information and belief" withheld those donations from Plaintiffs (*Id*. ¶¶ 2, 25, 40, 49); and "upon information and belief" charged donors "vague and not clear" processing fees and a "significant tip" that "reduced with significant amounts" what Plaintiffs ultimately received from the contribution donors made to GoFundMe (*Id*. ¶ 25).

Missing from Plaintiffs' Amended Complaint are any well-pled allegations about what was confusing or misleading about any of their NPO Pages. They do not identify any statements on any page that they claim could have misled or confused donors. Also missing from Plaintiffs' Amended Complaint are any facts showing that a single donor even made a single donation to any of Plaintiffs' NPO Pages in the first place, much less that GoFundMe held or delayed delivery of any such donation. And Plaintiffs also do not allege that, if anyone had donated through their NPO Pages instead of their websites directly, it would have reduced the donation in any way. Five of


STOLL STOLL BERNE LOKTING & SHLACHTER P.C.
209 S.W. OAK STREET, SUITE 500
PORTLAND, OREGON 97204
TEL. (503) 227-1600 FAX (503) 227-6840

Plaintiffs' websites accept online donations by credit card, with three of them even asking donors to add more to cover those standard credit card processing fees, ranging from 2.53% to 3.95%. RJN Decl. Exs. E, F, G. Commute Options does not even appear to accept online donations—you must contact their organization directly. RJN Decl. Ex. D.

Based on these threadbare allegations, Plaintiffs seek damages, including punitive damages, attorneys' fees, court costs, pre-and post-judgment interest, and such other and further relief to which the Plaintiffs and Class charities may be entitled. Am. Compl. at 14.

## III. LEGAL STANDARD

To survive a motion to dismiss under Rule 12(b)(6), a plaintiff must plead facts showing a right to relief that rises above "the speculative level." *Bell Atl. Corp.,* 550 U.S. at 555. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice," and pleadings that are "no more than conclusions, are not entitled to the assumption of truth." *Iqbal*, 556 U.S. at 678–79. Moreover, "[t]he court need not . . . accept as true allegations that contradict matters properly subject to judicial notice. . . ." *See Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001). "[S]imply pleading on information and belief is insufficient" to satisfy the pleading standards under *Iqbal* and *Twombly*. *Talk Radio Network Enters.,* 271 F. Supp. 3d at 1214 (a complaint "must be plausibly suggesting (not merely consistent with) behavior to satisfy threshold pleading standards").

Dismissal is proper when the complaint either lacks a cognizable legal theory or fails to allege sufficient facts to support a cognizable theory. *See Somers v. Apple, Inc.*, 729 F.3d 953, 959 (9th Cir. 2013). Dismissal with prejudice is appropriate where "amendment would be futile." *Carrico v. City & Cnty. of S.F.*, 656 F.3d 1002, 1008 (9th Cir. 2011).


STOLL STOLL BERNE LOKTING & SHLACHTER P.C.
209 S.W. OAK STREET, SUITE 500
PORTLAND, OREGON 97204
TEL. (503) 227-1600 FAX (503) 227-6840

## IV. ARGUMENT

### A. Plaintiffs' Lanham Act claim fails because making truthful statements about how to donate to a charity is protected as nominative fair use.

The nominative fair use doctrine applies when a defendant uses the plaintiff's tradename or trademark to describe the plaintiff or its own product or service. *See Cairns v. Franklin Mint Co.,* 292 F.3d 1139, 1151 (9th Cir. 2002). It "allows such truthful use of a mark [or tradename], even if the speaker fails to expressly disavow association with the trademark [or tradename] holder." *Toyota*, 610 F.3d at 1177. The Supreme Court explained the essential purpose of nominative fair use over a century ago: "When the mark [or tradename] is used in a way that does not deceive the public we see no such sanctity in the word as to prevent its being used to tell the truth. It is not taboo." *Prestonettes, Inc. v. Coty*, 264 U.S. 359, 368 (1924). And as the Ninth Circuit has held for over 20 years, "[m]uch useful social and commercial discourse would be all but impossible if speakers were under threat of an infringement lawsuit every time they made reference to a person, company or product by using its trademark." *New Kids*, 971 F.2d at 307.

The Ninth Circuit employs a three-part test to determine whether a defendant's use of a mark constitutes nominative fair use: (1) "the product or service in question must be one not readily identifiable without use of the trademark"; (2) "only so much of the mark[] may be used as is reasonably necessary to identify the product or service"; and (3) "the user must do nothing that would, in conjunction with the mark, suggest sponsorship or endorsement by the trademark holder. *Id*. at 308. When the pleadings establish that all three factors are met, the Ninth Circuit has affirmed dismissals of causes of action on nominative fair use grounds at the motion to dismiss stage. *See Applied Underwriters, Inc. v. Lichtenegger,* 913 F.3d 884, 897 (9th Cir. 2019); *Toyota*, 610 F.3d at 1185. Numerous courts within the Ninth Circuit have dismissed causes of action on nominative fair use grounds as well. *See PC Drivers Headquarters, LP v. Malwarebytes Inc.,*371


STOLL STOLL BERNE LOKTING & SHLACHTER P.C.
209 S.W. OAK STREET, SUITE 500
PORTLAND, OREGON 97204
TEL. (503) 227-1600 FAX (503) 227-6840

F. Supp. 3d 652 (N.D. Cal. 2019)*; Dr. Seuss Enters., L.P. v. ComicMix LLC,* 256 F. Supp. 3d 1099, 1112 (S.D. Cal. 2017)*; Beachbody, LLC v. Universal Nutrients, LLC,* No. CV 16-02015-R, 2016 WL 3912014, at *2(C.D. Cal. July 18, 2016)*; 1800 Get Thin, LLC v. Hiltzik,* No. CV11–00505 ODW PJWX, 2011 WL 3206486, at *3 (C.D. Cal. July 25, 2011)*; Architectural Mailboxes, LLC v. Epoch Design, LLC,* No. 10cv974 DMS, 2011 WL1630809, at *3 (S.D. Cal. Apr. 28, 2011). This Court should do the same here, because GoFundMe's alleged conduct satisfies all three factors.

**1. GoFundMe cannot identify the nonprofits without using their names.**

Plaintiffs' nonprofits are not readily identifiable without reference to their trading names. Put simply, there is no way that GoFundMe could let users search for and donate to a nonprofit without identifying the nonprofit by name. Indeed, Plaintiffs concede in their allegations that users would find the NPO Pages by searching for a nonprofit's name. *See* Am. Compl. ¶ 28. Because crowdfunding donations for nonprofits would be "nearly impossible to do without mentioning" the nonprofit's name, the first factor is satisfied. *Toyota*, 610 F.3d at 1181.

**2. GoFundMe does not use more of the trademarks than reasonably necessary to allow users to find and donate to nonprofits.**

GoFundMe only used so much of the nonprofits' tradenames or trademarks "as is reasonably necessary to identify" the nonprofit. *New Kids*, 971 F.2d at 308. Plaintiffs allege only that the NPO Pages included "photos, logos, mission statements, links to YouTube channels, and other information about the non-profit"—all taken from "publicly available sources of information," such as tax filings. Am. Compl. ¶ 23. The existing pages for Commute Options and Waterstrong illustrate how limited this use was. For each, the page includes the nonprofit's name and logo, a one- or two-sentence mission statement, a list with the nonprofit's website and social


STOLL STOLL BERNE LOKTING & SHLACHTER P.C.
209 S.W. OAK STREET, SUITE 500
PORTLAND, OREGON 97204
TEL. (503) 227-1600 FAX (503) 227-6840

media pages, a list of related causes, and the nonprofit's tax ID, address, and year of establishment—along with a note that "[s]elect content is provided by Candid" (an aggregator of public nonprofit information). RJN Decl. Exs. A & C.

Courts have recognized that similar uses of basic information are within the bounds of nominative fair use. *Left Field Holdings*, 2022 WL 17072948, at *1 (addressing use of restaurants' names, pictures, and basic information); *Cairns*, 292 F.3d at 1154 ("a caption reading 'Diana'" and "photograph showing Princess Diana wearing her royal tiara and bolero jacket" was reasonably necessary to identify product). Moreover, as the Ninth Circuit has recognized, where "the description of the defendant's product depends on the description of the plaintiff's product, more use of the plaintiff's trademark is 'reasonably necessary to identify the plaintiff's product' than in cases where the description of the defendant's product does not depend on the description of the plaintiff's product." *Cairns*, 292 F.3d at 1154. In *Cairns* the court acknowledged, for example:

> General Motors would probably be able to sell its Oldsmobile Eighty–Eight without any reference to a basketball star who, like the car, received an award three years in a row . . . But it is doubtful whether Franklin Mint would be able to sell its "Diana, Princess of Wales Porcelain Portrait Doll" without prominent reference to Princess Diana. Not every Franklin Mint customer can be expected to recognize Princess Diana's features on the doll. And even fewer Franklin Mint customers can be expected to recognize Princess Diana's royal tiara and bolero jacket on the doll.

*Id*. (citation omitted). So too here: it is doubtful a potential donor would know the mission of Plaintiffs' nonprofits, and whether its purpose aligned with the donor's values and goals, without reference to more than just the nonprofit's name (e.g., logos, mission statements, links to relevant websites). And if even a potential donor could identify the nonprofit simply by name, the additional references serve as confirmatory references that the nonprofit page is in fact for the benefit of the nonprofit the donor intended to identify. Because GoFundMe "had to ensure that its


STOLL STOLL BERNE LOKTING & SHLACHTER P.C.
209 S.W. OAK STREET, SUITE 500
PORTLAND, OREGON 97204
TEL. (503) 227-1600 FAX (503) 227-6840

customers understood the references" to the identified nonprofits, the second element of the *New Kids* nominative fair use test is also met. *See id.* (in addition to reference to Princess Diana, a photograph showing Princess Diana was reasonably necessary).

### 3. Plaintiffs allege no facts showing false sponsorship.

Plaintiffs' Amended Complaint is devoid of any facts showing that GoFundMe did anything to falsely suggest sponsorship under the third factor. When evaluating whether sponsorship is implied in an "online marketplace," courts must conduct their analysis from the perspective of a "reasonably prudent consumer accustomed to shopping online" for the product at issue. *Toyota*, 610 F.3d at 1176. "Unreasonable, imprudent and inexperienced web-shoppers are not relevant." *Id.* The Ninth Circuit explained more than a decade ago that the degree of care ascribed to online consumers "is becoming more heightened as the novelty of the Internet evaporates and online commerce becomes common place"—and that has only become more true since. *Network Automation, Inc. v. Advanced Sys. Concepts, Inc.*, 638 F.3d 1137, 1152 (9th Cir. 2011). Moreover, nominative fair use permits truthful use of a mark, "even if the speaker fails to expressly disavow association with the trademark holder. . . ." *Toyota*, 610 F.3d at 1177 ("Speakers are under no obligation to provide a disclaimer as a condition for engaging in truthful, non-misleading speech.").

Here, Plaintiffs' only allegation regarding false sponsorship is a boilerplate repetition of the language of Section 1125(a)(1)(A). Am. Compl. ¶ 36 ("It cannot be disputed that the donation pages . . . [d]id, or w[ere] likely to, cause confusion in the minds of donors as to the affiliation, connection, or association of the GoFundMe pages and the charities that they purportedly were associated with[.]"). Such conclusory statements, with no facts to support them, are "not entitled to the assumption of truth." *Iqbal*, 556 U.S. 679.


STOLL STOLL BERNE LOKTING & SHLACHTER P.C.
209 S.W. OAK STREET, SUITE 500
PORTLAND, OREGON 97204
TEL. (503) 227-1600 FAX (503) 227-6840

Moreover, the existing pages for Commute Options and Waterstrong contradict these conclusory allegations. RJN Decl. Exs A & C. The pages feature GoFundMe's logo prominently at the top. *Id.* They use the same light-green and black color scheme used throughout GoFundMe's website, not the color scheme from the Plaintiffs' websites. *Compare id. with* RJN Decl. Exs. D & G. They list the nonprofit's name using the same font used throughout GoFundMe's website, not any specialized font used in the Plaintiffs' websites. RJN Decl. Exs. A & C. They include numerous ways for a user to directly contact the nonprofit, including its website and address. *Id*. They notify users, immediately below the button for donating, that the donation "may be sent directly to the nonprofit, if they have enabled GoFundMe Pay with us," and, "[i]f not, it will be sent to PayPal Giving Fund, minus transaction fees, and granted within 15-45 days, subject to its terms." RJN Decl. Ex. B. The pages contained no statements purportedly made by the nonprofits about GoFundMe or the page. RJN Decl. Exs A & C. And, as broader context, the pages were part of a website on which, by Plaintiffs' allegations, users could search for and find similar donation pages for 1.4 million other nonprofits nationwide. Am. Compl. ¶ 17.

Thus, Plaintiffs have alleged no basis for finding that any reasonable consumer would have believed that the NPO Pages were anything other than what they were—pages created by GoFundMe listing publicly available information about the nonprofits and providing a mechanism for making a donation. A reasonably prudent consumer accustomed to making donations online would know that, as with online shopping, there are multiple channels for donating, including directly through a nonprofit's website or through a crowdfunding platform. Such a consumer would also recognize GoFundMe for what it is widely known as—a platform for users to connect with charitable causes.


STOLL STOLL BERNE LOKTING & SHLACHTER P.C.
209 S.W. OAK STREET, SUITE 500
PORTLAND, OREGON 97204
TEL. (503) 227-1600 FAX (503) 227-6840

Courts have found the third element for nominative fair use satisfied in similar circumstances in the online commerce context. For example, in *Left Field Holdings v. Google*, Google created automated pages for restaurants, so if a user searched for the restaurant, the user got a page with the restaurant's name, information, images of the restaurant and an "Order Online" button that would allow the user to order from the restaurant through popular third-party delivery services. 2022 WL 17072948, at *1. Plaintiffs seeking to represent a nationwide class of restaurants alleged that Google violated their trademarks by putting up these pages without their consent. *Id.* The court found at the pleading stage that the alleged conduct was "a textbook example of nominative fair use[,]" and that there was no basis to conclude that users were misled in any way. *Id.* In *Toyota Motor Sales, U.S.A., Inc. v. Tabari*, the Ninth Circuit held that "use of [a] mark [is] fair" if when a user visits defendant's website they would be "disabused of any notion" of sponsorship by plaintiff. 610 F.3d at 1182.

Courts have also recognized, more generally, that in the context of online commerce, reasonably prudent consumers understand that just because a product appears on another company's website, that does not mean the company who owns the product is affiliated or associated with the site. *See Multi Time Mach., Inc. v. Amazon.com, Inc.*, 804 F.3d 930 (9th Cir. 2015) (concluding that a "reasonably prudent consumer accustomed to shopping online" would not be confused by Amazon's search results page); *Hasbro, Inc. v. Asus Comput. Int'l, Inc.*, No. CV 11–10437 PSG, 2012 WL 13012663, at *9 (C.D. Cal. Mar. 23, 2012) (reasonable consumers "understand that when executing a key word search" on Google—"the world's largest search engine"—that "the results they are presented with originate from thousands of sources, if not more."). Courts have also reached similar conclusions outside the e-commerce context. *See Cairns*, 292 F.3d at 1154–55 (third *New Kids* factor satisfied in part due to lack of claim that the


STOLL STOLL BERNE LOKTING & SHLACHTER P.C.
209 S.W. OAK STREET, SUITE 500
PORTLAND, OREGON 97204
TEL. (503) 227-1600 FAX (503) 227-6840

products were "sponsored or endorsed" by plaintiff); *Beachbody,* 2016 WL 3912014, at *2 (third factor met where plaintiff did not "allege sufficient facts to" demonstrate consumers believed plaintiff "sponsor[ed] or endorse[d]" defendant's product or to "associate the two products together"); *1800 Get Thin, LLC,*2011 WL 3206486, at *3 (third factor met where no "sugges[tion] Plaintiff has sponsored or endorsed Defendants' use").

Plaintiffs also include vague allegations that some of the publicly available information about nonprofits collected on the NPO Pages was "wrong, outdated, or contrary to the tone and mission of the non[]profits" and that the NPO Pages were "not clear" that tips and transaction fees "were not going to the nonprofits." Am. Compl. ¶¶ 23- 25. It is not clear how these alleged misstatements relate to false association or endorsement.[4] In any event, as to the first allegation, Plaintiffs do not identify ***any*** statement that was incorrect or the wrong tone on their NPO Pages or the NPO Pages for any other nonprofit. Rather, the most Plaintiffs' allege is that generally "it is believed" GoFundMe established NPO pages with such incorrect information. *Id.* ¶ 23. Such threadbare, information-and-belief based allegations, unsupported by "factual information that makes the inference of culpability plausible" are insufficient to survive a motion to dismiss. *Soo Park v. Thompson*, 851 F.3d 910, 928 (9th Cir. 2017). Moreover, Commute Options and Waterstrong make these bare-bones allegations despite having claimed their pages, keeping them

---

[4] In their claim, Plaintiffs also quote the language from Section 1125(a)(1)(B)—which relates to false advertising—about misrepresenting the nature, characteristics, or qualities of another person's goods or services. Am. Compl. ¶¶ 35-36. But Plaintiffs do not allege a false advertising claim, and, if they had, it would be subject to the heightened pleading standard under Rule 9(b). *Ely Holdings Ltd. v. O'Keeffe's, Inc.*, No. 18-cv-06721-JCS, 2019 WL 3779197, at *4 (N.D. Cal. Aug. 12, 2019); *23andMe, Inc. v. Ancestry.com DNA, LLC*, 356 F. Supp. 3d 889, 908 (N.D. Cal. 2018), *aff'd*, 778 F. App'x 966 (Fed. Cir. 2019).


STOLL STOLL BERNE LOKTING & SHLACHTER P.C.
209 S.W. OAK STREET, SUITE 500
PORTLAND, OREGON 97204
TEL. (503) 227-1600 FAX (503) 227-6840

active, and thereby knowing full well what their GoFundMe webpages looked like, including whether it included any misrepresentations. *See supra* II.C.

Similarly, Plaintiffs fail to plead any facts showing how the NPO Pages were in any way misleading regarding tips or transaction fees. And the pages for Commute Options and Waterstrong show that GoFundMe clearly disclosed that a 2.2% transaction plus 30-cent transaction fee would be deducted and that tips are optional and separate (and not deducted) from any donation. *See supra* II.B; RJN Decl. Exs. B & J.

For all these reasons, GoFundMe's alleged use satisfies all of the *New Kids* factors. The Court should therefore dismiss Plaintiffs' false endorsement/association claim with prejudice.

### B. Plaintiffs lack standing under the Lanham Act because they suffered no commercial injury from GoFundMe telling users how to donate to them.

The Lanham Act does not allow "all factually injured plaintiffs to recover. . . ." *Lexmark,* 572 U.S. at 129. Rather, to have standing to state a false association/endorsement claim, a plaintiff must plead 1) that it suffered an injury within the "zone-of-interests" protected by the statute; and 2) that the injury was "proximately caused by the defendant's misrepresentations." *Id.* at 140.[5] Because Plaintiffs' allegations fail to satisfy either test, their Lanham Act claim must be dismissed.

#### 1. Plaintiffs allege no injury to their reputation or sales.

---

[5] Although the Ninth Circuit has yet to weigh in on the question, a number of federal courts have applied *Lexmark*'s standing analysis to false association claims arising under 15 U.S.C. § 1125(a). *See, e.g., Belmora LLC v. Bayer Consumer Care AG*, 819 F.3d 697, 710–12 (4th Cir. 2016) (applying *Lexmark* to both false advertising and false association claims); *Int'l Found. of Em. Ben. Plans, Inc. v. Cottrell*, No. WDQ–14–1269, 2015 WL 127839, at *3 (D. Md. Jan. 7, 2015) ("[T]here is no reason to think the Supreme Court would apply different standing requirements to a false designation claim."); *Advanced Fluid Sys., Inc. v. Huber*, 28 F.Supp.3d 306, 332–33 (M.D. Pa. 2014) (applying *Lexmark* to both false designation of origin and false advertising claims).


STOLL STOLL BERNE LOKTING & SHLACHTER P.C.
209 S.W. OAK STREET, SUITE 500
PORTLAND, OREGON 97204
TEL. (503) 227-1600 FAX (503) 227-6840

To satisfy the "zone-of-interests" test, "a plaintiff must allege an injury to a commercial interest in reputation or sales." *Lexmark*, 572 U.S. at 131-32. Conclusory statements are insufficient; a plaintiff must allege *facts* showing injury to either 1) reputation or 2) sales. *See Charlotte's Web, Inc. v. AAXLL Supply Co. LLC*, No. 4:20-cv-02692-YGR, 2020 WL 6891876, at *1 (N.D. Cal. Nov. 24, 2020); *ThermoLife Int'l LLC v. Sparta Nutrition LLC*, No. CV-19-01715-PHX-SMB, 2020 WL 248164, at *7 (D. Ariz. Jan. 16, 2020). Plaintiffs have not done so.

**Lost sales:** Plaintiffs cannot allege any lost sales, most fundamentally, because the purpose of GoFundMe's product at issue, the NPO Pages, was not to compete with or take sales from any product offered by Plaintiffs. Rather, the purpose of the product was to allow GoFundMe's users ***to donate money to the Plaintiffs***. In other words, if someone used the NPO Pages, the result would not have been money being taken from the Plaintiffs, but rather money being sent to them. This is as far removed as one can imagine from the "paradigmatic" injury covered by the Lanham Act, which is a "diversion of sales to a direct competitor." *Lexmark*, 572 U.S. at 138; *see also Welk Resort Grp. Inc. v. Reed Hein & Assocs., LLC*, No. 3:17-cv-01499-L-AGS, 2019 WL 1242446, at *15 (S.D. Cal. Mar. 18, 2019) (parties who "do not offer the same products or services . . . are not in competition" under the Lanham Act).

Plaintiffs nonetheless apparently seek to establish standing based on the theory that users made donations to them through GoFundMe's NPO Pages rather than through their own websites. Am. Compl. ¶ 28. This theory fails for two reasons.

First, and most importantly, Plaintiffs have not alleged that any donor actually did make a donation through their NPO Pages instead of through their own websites. Indeed, Plaintiffs have not even adequately alleged that any donor made ***any*** donation through any of their GoFundMe NPO Pages. Instead, Plaintiffs merely allege "[u]pon information and belief [that] donors made a


STOLL STOLL BERNE LOKTING & SHLACHTER P.C.
209 S.W. OAK STREET, SUITE 500
PORTLAND, OREGON 97204
TEL. (503) 227-1600 FAX (503) 227-6840

donation to the charity" and that GoFundMe "***potentially*** accepted monetary donations from members of the public through [the] donation webpages created in the names of the Plaintiffs['] charities and those in the Class[.]" Am. Compl. ¶¶ 24, 40 (emphasis added). They do not allege that this *actually* happened for any of the Plaintiffs. Indeed, the existing pages for two of the Plaintiffs show no donations to date. RJN Decl. Exs A & C. Such "information and belief" type allegations untethered to factual information is likewise insufficient to defeat a motion to dismiss. Rather, "a complaint must state more than a suspicion to proceed, and the Court cannot presume a bad act from an opportunity to perform a bad act . . . a pleading must be plausibly suggesting (not merely consistent with) behavior to satisfy threshold pleading standards." *Talk Radio Network Enters.,* 271 F. Supp. 3d at 1214. *See also Killa Bees Distrib. LLC v. Left Coast Fin. Sols., Inc.*, No. 3:23-cv-1629-JR, 2025 WL 3055771 (D. Or. Oct. 31, 2025) (dismissing "information and belief" style pleadings when the facts contradict any plausibility of plaintiffs' allegations).

Second, even if any donor had donated to Plaintiffs from the NPO Pages instead of their own websites, Plaintiffs fail to allege facts showing this would have caused any difference. Plaintiffs only allege "[u]pon information and belief" that GoFundMe charged a processing fee and default tip "that resulted in reduction of the donation amount given by the donor or received by the charity." Am. Compl. ¶ 25. But Plaintiffs have done so without any factual support for that assertion whatsoever. In fact, Commute Options and Waterstrong's NPO Pages make clear that any tips were purely optional, and, even if a donor chose to leave a tip, the tip was added in addition to the donation amount. RJN Decl. Ex. B. It did not reduce the donation amount. As for Plaintiffs' allegation that GoFundMe's transaction fee reduced the ultimate donation amount given by the donor or received by the charity, Plaintiffs neglect that their own websites accept credit card donations and charge credit card transaction fees. RJN Decl. Exs. E-I. Plaintiffs do not allege that


STOLL STOLL BERNE LOKTING & SHLACHTER P.C.
209 S.W. OAK STREET, SUITE 500
PORTLAND, OREGON 97204
TEL. (503) 227-1600 FAX (503) 227-6840

donations made on their own websites would have incurred a lower transaction fee. Indeed, the websites for the five Plaintiffs that accepted donations online use credit cards, subject to standard fees—with three of them asking donors to pay extra to cover those fees, in amounts ranging from 2.53% to 3.95%. RJN Decl. Exs. E-G. As explained above, these kinds of threadbare allegations based on "information and belief" that contradict the facts or lack factual support to make them plausible are insufficient. *See Killa Bees Distrib. LLC*, 2025 WL 3056657, at *5; *Talk Radio Network Enters.*, 271 F. Supp. 3d at 1211.

**Reputation:** Finally, Plaintiffs allege no facts showing that they have suffered cognizable damage to their reputation. Plaintiffs' gripe appears to be that they have suffered reputational harm because GoFundMe allegedly posted wrong, outdated, or inconsistent information about Plaintiffs on the NPO Pages and caused uncertainty around tipping and transaction fees that has eroded trust among donors. As previously explained, *see supra* IV.A.3, neither of these allegations meet the pleading standard. Plaintiffs do not identify any statement that was incorrect and GoFundMe clearly and conspicuously disclosed its optional tip mechanism and the charged transaction fee. Plaintiffs' contrary and conclusory allegations are "ipse dixit and not the pleading of facts" and a "far cry" from what *Lexmark* requires to state a Lanham Act claim. *Maffick LLC v. Facebook, Inc.*, No. 20-CV-05222-JD, 2021 WL 1893074, at *5 (N.D. Cal. May 11, 2021).

### 2. Plaintiffs cannot satisfy the proximate-cause requirement.

Plaintiffs likewise fail the proximate-cause requirement. That requirement demands a plaintiff to "show economic or reputational injury flowing directly from the deception wrought by the defendant's advertising[,]" which "occurs when deception of consumers causes them to withhold trade from the plaintiff." *Lexmark*, 572 U.S. at 133.

Even assuming Plaintiffs adequately alleged that anyone made a donation to them through


STOLL STOLL BERNE LOKTING & SHLACHTER P.C.
209 S.W. OAK STREET, SUITE 500
PORTLAND, OREGON 97204
TEL. (503) 227-1600 FAX (503) 227-6840

the NPO Pages instead of through their own websites (they have not and cannot), and even if they had adequately alleged that this would have caused any injury (they also have not and cannot), Plaintiffs have not pled any facts to establish "the causal chain linking [Plaintiffs'] injuries to consumer confusion." *Id.* at 139. Donors are free to decide when, how, and through what platform they wish to make charitable contributions. Had donors wanted to donate directly to Plaintiffs' websites, they could have done that through GoFundMe's NPO Page too. As Plaintiffs allege, GoFundMe's NPO Pages displayed the nonprofit's website address. Indeed, unlike in a direct competition situation, it is not necessarily the case that a GoFundMe user who made a donation to any Plaintiff through GoFundMe would have otherwise made a donation to the Plaintiff's website had the NPO Pages not existed—such a user may well not have made any donation at all. This was the very purpose of NPO Pages: to connect donors visiting GoFundMe's popular platform with nonprofits who might otherwise go undiscovered. Such customer independence leads to "discontinuity between the alleged false advertising and Plaintiff's asserted injury, and bridging this gap to determine the true cause of Plaintiff's injury would require speculative proceedings or intricate, uncertain inquiries." *Alfasigma USA, Inc. v. First Databank, Inc.*, No. 18-cv-06924-HSG, 2022 WL 899848, at *11 (N.D. Cal. Mar. 28, 2022) (internal quotation marks and citation omitted). Moreover, because "there could be any number of intervening reasons" for why a donor may have chosen to donate through GoFundMe rather than Plaintiffs' websites, if they did at all, an "artificial and attenuated link between [GoFundMe's] purported false [association/endorsement] and Plaintiffs' harm, inter alia, defies the reality of business." *ThermoLife Int'l LLC,* 2020 WL 248164, at *9.

Accordingly, Plaintiffs have failed to establish standing to pursue their Lanham Act false association/false endorsement claim and it should be dismissed.


STOLL STOLL BERNE LOKTING & SHLACHTER P.C.
209 S.W. OAK STREET, SUITE 500
PORTLAND, OREGON 97204
TEL. (503) 227-1600 FAX (503) 227-6840

### C. Plaintiffs' Lanham Act claim also fails because Plaintiffs do not allege GoFundMe's use of their nonprofit name was likely to cause confusion among donors or damage to Plaintiffs.

Plaintiffs' false association/endorsement claim must be dismissed for two additional reasons. To successfully plead a false association claim under the Lanham Act, Plaintiffs must plead, among other elements, GoFundMe's use of their nonprofit names and information "is likely to cause confusion, mistake, or deception as to (a) the affiliation, connection, or association of defendant with another person, or (b) as to the origin, sponsorship, or approval of defendant's goods, services, or commercial activities by another person" and that Plaintiffs "ha[ve] been or [are] likely to be damaged by these acts." *Zamfir v. Casperlabs*, LLC, 528 F. Supp. 3d 1136, 1143 (S.D. Cal. 2021). Plaintiffs have done neither.

**Likelihood of Confusion:** "Plaintiff[s] must be able to show that the public believe[s] that the mark's owner sponsored or otherwise approved of the use of the trademark." *Hart v. Amazon.com, Inc.*, 191 F. Supp. 3d 809, 819 (N.D. Ill. 2016), *aff'd*, 845 F.3d 802 (7th Cir. 2017). Plaintiffs have not done so. To the contrary, as the existing pages for Commute Options and Waterstrong reflect, the NPO Pages were located on GoFundMe's website, with GoFundMe's logo marked prominently, included the Plaintiffs' nonprofit name using color and font consistent with the rest of GoFundMe's website, and not any specialized font used on Plaintiffs' websites. *See supra* II.B. Moreover, they included numerous ways for donors to directly contact the nonprofit, and clearly notified the donor that the donation would be sent to the nonprofit. *Id*. The NPO Pages contained no statements purportedly made by the nonprofits about GoFundMe or the page. *Id*. And the NPO Pages were part of a website on which, by Plaintiffs' allegations, users could search for and find similar donation pages for 1.4 million other nonprofits nationwide. Am. Compl. ¶ 17. Plaintiffs have alleged no basis for finding that any reasonable consumer would have believed that


STOLL STOLL BERNE LOKTING & SHLACHTER P.C.
209 S.W. OAK STREET, SUITE 500
PORTLAND, OREGON 97204
TEL. (503) 227-1600 FAX (503) 227-6840

the NPO Pages were anything other than what they were—pages created by GoFundMe listing publicly available information about the nonprofits and providing a mechanism for making a donation.

In *Hart* the court reasoned "consumer[s] would [not] believe or interpret the sale of Plaintiff's books through third-party sellers as an endorsement by Plaintiff of Amazon's website." *Hart*, 191 F. Supp. 3d at 819 (dismissing false/association/endorsement claim). The same logic follows here: no donor would believe or interpret the ability to donate to a nonprofit through GoFundMe, a third-party crowdfunding platform, as an endorsement by Plaintiffs of GoFundMe's website. *See also Martin v. Wendy's Int'l, Inc.*, 183 F. Supp. 3d 925, 936 (N.D. Ill. 2016) (dismissing false endorsement claim for failure to plead likelihood of confusion when context of the use does not suggest endorsement).

**Damage:** Nor have Plaintiffs adequately alleged they were or are likely to be damaged by GoFundMe's NPO Pages. First, GoFundMe removed all unclaimed NPO Pages before this litigation was filed. *See supra* II.C. Accordingly, Plaintiffs cannot be damaged in the future by NPO Pages that no longer exist. And Commute Options and Waterstrong have chosen to claim and leave their pages up, suggesting that they recognize there is value in deciding to keep their pages public—namely, donor acquisition through GoFundMe's platform. Second, for the reasons explained *supra* IV.B, Plaintiffs' allegations that they suffered harm or economic or reputational injury are implausible and conclusory at best. Plaintiffs therefore fail to adequately allege they have or are likely to be damaged by GoFundMe's NPO Pages.

### D. Plaintiffs' conversion claim fails because they do not and cannot allege any amount of funds withheld from them.


STOLL STOLL BERNE LOKTING & SHLACHTER P.C.
209 S.W. OAK STREET, SUITE 500
PORTLAND, OREGON 97204
TEL. (503) 227-1600 FAX (503) 227-6840

In Oregon, conversion is an "intentional exercise of dominion or control over a chattel which so seriously interferes with the right of another to control it that the actor may justly be required to pay the other the full value of the chattel." *Talk Radio Network Enters.*, 271 F. Supp. 3d at 1210 (citing *Mustola v. Toddy*, 253 Or. 658, 663, (1969)). Money "may become the subject of conversion" but only "under certain circumstances." *Id.* (citing *Wood Indus. Corp. v. Rose*, 271 Or. 103, 108 (1975)). "[T]here can be no conversion of money, unless it was wrongfully received by the party charged with conversion or unless such party was under obligation to return the specific money to the party claiming it." *Id*. Where "Plaintiffs fail to identify sums, approximation of sums, or account holdings to which they claim right of possession under the first element of conversion," the conversion claim must be dismissed. *Id*. (dismissing conversion claim *with prejudice*). *See also Motameni v. Adams,* No. 3:21-CV-01184-HZ, 2022 WL 3682940, at *9 (D. Or. Aug. 25, 2022) (dismissing conversion claim for failure to identify sum of money belonging to claimant over which the other party exercised control); *Sellassie v. Inesscents Aromatic Botanicals, LLC*, No. 1:20-CV-00455-CL, 2020 WL 5414594, at *4 (D. Or. July 28, 2020), *report and recommendation adopted sub nom. Sellasie v. Inesscents Aromatic Botanicals, LLC*, No. 1:20-CV-455-CL, 2020 WL 5409155 (D. Or. Sept. 8, 2020) (requiring "specific sum of money or a time period in which the defendants exercised dominion and control. . . .").

Plaintiffs have not fulfilled the basic legal requirement to identify a specific sum, or approximation of sums to which they are entitled. This alone dooms their conversion claim. *Talk Radio Network Enters.*, 271 F. Supp. 3d at 1210 (dismissing conversion claim *with prejudice*); *Motameni*, 2022 WL 3682940, at *9; *Sellassie*, 2020 WL 5414594, at *4. More fundamentally, Plaintiffs have only alleged on "information and belief" that GoFundMe withheld funds from Plaintiffs. Am. Compl. ¶¶ 2, 25, 49. Plaintiffs Amended Complaint is devoid of any allegation


STOLL STOLL BERNE LOKTING & SHLACHTER P.C.
209 S.W. OAK STREET, SUITE 500
PORTLAND, OREGON 97204
TEL. (503) 227-1600 FAX (503) 227-6840

that GoFundMe withheld or delayed transmission of any donations to them. And Plaintiffs cannot amend their allegations to make it so, which warrants dismissal with prejudice. Not a single donor made a single donation to any of Plaintiffs' NPO Pages, and not a single dollar was withheld from them. *See supra* IV.B.1. Moreover, as GoFundMe clearly discloses in the NPO Pages and elsewhere on its website, GoFundMe never received or held any donations from any NPO Page, because all donations were processed by third-party payment processors, such as PPGF; GoFundMe is a platform, not a bank or a payment processor. RJN Decl. Exs. B, J, L. For these reasons, Plaintiffs' allegations are insufficient to adequately plead injury as well. For the reasons explained above, those allegations lack any factual basis and are thus improper. *See supra* II.A.3; *Talk Radio Network Enters.*, 271 F. Supp. 3d at 1210.

Plaintiffs cannot hide behind the excuse that the exact amount of donations (if any) is information only known to GoFundMe. That is because Plaintiffs' conversion claim is far more than just technically deficient for lacking information unknown to Plaintiffs. It is supported by absolutely ***zero*** facts that make it even plausible. Indeed, glaringly absent from Plaintiffs' Amended Complaint are facts that Plaintiffs could know. For example, it lacks even one allegation that a single donor made a single donation to any of Plaintiffs' NPO Pages. Plaintiffs do not even allege that anyone told them that they had received donations through GoFundMe. Plaintiffs ask this Court to accept as true their allegations that GoFundMe ***stole*** funds from them without any facts in the Amended Complaint to support that Plaintiffs ever even received a single donation from anyone via the NPO Pages. This Court cannot make that inference from what Plaintiffs have alleged. "[A] complaint must state more than a suspicion to proceed, and the Court cannot presume a bad act from an opportunity to perform a bad act . . . a pleading must be plausibly suggesting


STOLL STOLL BERNE LOKTING & SHLACHTER P.C.
209 S.W. OAK STREET, SUITE 500
PORTLAND, OREGON 97204
TEL. (503) 227-1600 FAX (503) 227-6840

(not merely consistent with) behavior to satisfy threshold pleading standards." *Talk Radio Network Enters.*, 271 F. Supp. 3d at 1214.

For these reasons, Plaintiffs fail to state a cause of action for conversion.

### E. Plaintiffs' unjust enrichment claim fails because they cannot identify any funds meant for Plaintiffs that GoFundMe received or withheld.

Under Oregon law, "to adequately plead unjust enrichment, a plaintiff must allege: (1) a benefit conferred; (2) awareness by the recipient that a benefit has been received; and (3) circumstances where it would be unjust to allow retention of the benefit without requiring the recipient to pay for it." *Talk Radio Network Enters*, 271 F. Supp. 3d at 1213 (internal quotation marks and citation omitted). By Plaintiffs' own admission, they merely are "informed and believe" that GoFundMe received donated funds intended for Plaintiffs through its NPO pages, Am. Compl. ¶ 49, without any factual basis to support that even a single donor made a donation to the NPO pages or, if they had, that GoFundMe withheld or failed to deliver those funds to Plaintiffs. *See supra* IV.A.3. Nor have they sufficiently pleaded that GoFundMe retained tips or transaction fees intended for Plaintiffs. *See supra* IV.A.3. That information-and-belief-based allegation is insufficient. *See Talk Radio Network Enters*, 271 F. Supp. 3d at 1213 ("a complaint must state more than a suspicion to proceed, and the Court cannot presume a bad act from an opportunity to perform a bad act. . ."). Plaintiffs' unjust enrichment claim cannot survive when they have not even adequately alleged that GoFundMe received a benefit, let alone an unjust benefit, that was intended for and never given to Plaintiffs. For this reason, the claim must be dismissed. *Id.* (dismissing unjust enrichment claim where plaintiffs "fail[ed] to specify an identifiable benefit conferred" and merely pled on information and belief).


STOLL STOLL BERNE LOKTING & SHLACHTER P.C.
209 S.W. OAK STREET, SUITE 500
PORTLAND, OREGON 97204
TEL. (503) 227-1600 FAX (503) 227-6840

### F. Punitive damages is not a standalone claim.

The Court should dismiss Plaintiffs' punitive damages claim because it is not a standalone cause of action. *See Imhoff v. Ethicon, Inc*., No. 3:20-CV-00380-AR, 2022 WL 4239171, at *11 (D. Or. July 15, 2022), *report and recommendation adopted*, No. 3:20-CV-00380-AR, 2022 WL 4237145 (D. Or. Sept. 14, 2022). It is a remedy, not an independent claim. Even as a remedy, Plaintiffs have failed to establish that punitive damages are warranted. Under ORS 31.730(1):

> [p]unitive damages are not recoverable in a civil action unless it is proven by clear and convincing evidence that the party against whom punitive damages are sought has acted *with malice* or has shown a *reckless and outrageous indifference to a highly unreasonable risk of harm* and has acted with a c*onscious indifference to the health, safety and welfare of others*.

(emphases added). Plaintiffs' Complaint makes no allegation of the sort. Simply baldly alleging, without any facts, that GoFundMe's conduct constituted "reckless and outrageous indifference to the Plaintiffs and Class Charities, and to the donors that these charities depend on for charitable contributions. . ." (Am. Compl. ¶ 56) does not state a claim for punitive damages. S*nell v. Vocational Rehab. State Unit Pers*., No. 3:20-CV-00242-MO, 2020 WL 4506779, at *4 (D. Or. Aug. 5, 2020) ("Ms. Snell has not demonstrated that she can seek punitive damages because she has not alleged that the Defendants exhibited 'extreme conduct.'"). Plaintiffs' punitive damages claim also fails for the simple reason that they have failed to adequately state an underlying claim warranting damages. Plaintiffs' conclusory allegations are wholly insufficient to adequately seek punitive damages. The Court should dismiss this freestanding claim with prejudice.

## V. CONCLUSION

GoFundMe's truthful, informational use of Plaintiffs' nonprofit names is quintessential, protected nominative fair use. Plaintiffs' Lanham Act claim fails on that ground alone. Even so, Plaintiffs' lack standing to pursue their Lanham Act Claim and fail to allege likelihood of confusion as required under the Act. Plaintiffs' conversion and unjust enrichment claims fail


STOLL STOLL BERNE LOKTING & SHLACHTER P.C.
209 S.W. OAK STREET, SUITE 500
PORTLAND, OREGON 97204
TEL. (503) 227-1600 FAX (503) 227-6840

because they do not and cannot identify any funds withheld. And the punitive damages claim fails as a standalone cause of action and because Plaintiffs have not stated an underlying claim to support punitive damages. Because Plaintiffs cannot cure these fatal defects through further amendment, the Amended Complaint should be dismissed with prejudice.


STOLL STOLL BERNE LOKTING & SHLACHTER P.C.
209 S.W. OAK STREET, SUITE 500
PORTLAND, OREGON 97204
TEL. (503) 227-1600 FAX (503) 227-6840

DATED this 17th day of August, 2026.

STOLL STOLL BERNE LOKTING &
SHLACHTER P.C.

By: *___/s/ Benjamin Berkowitz___*
**Timothy S. DeJong**, OSB No. 940662
Email: tdejong@stollberne.com
**Chloe A. Jasper**, OSB No. 253957
Email: cjasper@stollberne.com

209 S.W. Oak Street, Suite 500
Portland, Oregon 97204
Telephone: (503) 227-1600
Facsimile: (503) 227-6840

And

**Benjamin Berkowitz**, (*pro hac vice*)
Email: bberkowitz@keker.com
**Matan Shacham**, (*pro hac vice*)
mshacham@keker.com
KEKER, VAN NEST & PETERS LLP
633 Battery Street
San Francisco, CA 94111-1809
Telephone: (415) 773-6612
Facsimile: (415) 397-7188

*Attorneys for Defendant GoFundMe Inc.*